IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MILDRED K. FREDERICK, by and through Her Attorney in Fact, KAREN FREDERICK, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 18-00304-KD-MU ) |
| LIVE OAK VILLAGE and TAMMY ROBINSON, | ) ) ) ) |
| Defendants. | ) |

**ORDER**

This action is before the Court on Plaintiff Mildred K. Frederick's Motion for Temporary Restraining Order and Preliminary Injunction (doc. 2), Plaintiff's Renewed Motion for Temporary Restraining Order (doc 8), Defendants' Response (doc. 10), Plaintiff's Brief in Response to the Court's Order (doc. 11), Defendants' Response to Plaintiff's Brief (doc. 15), and Defendants' Response to Plaintiff's Motion for Preliminary Injunction (doc. 16). The motions were heard on July 27, 2018. Upon consideration of the above, the argument and evidence presented at the hearing, and for the reasons set forth herein, Plaintiff's Motion for Preliminary Injunction is DENIED and her Renewed Motion for Temporary Restraining Order is MOOT[1] (docs. 2, 8).

On July 9, 2018, Plaintiff Mildred V. Frederick, by and through her attorney in fact Karen Frederick, filed a complaint against Defendant Live Oak Village, an assisted living

---

[1] *See Mixed Fighting Alliance Promotions, Inc. v. de la Noval*, 2011 WL 13223714, at *14 (S.D. Fla. Apr. 14, 2011) ("The injunction hearing has now taken place, obviating the need for a TRO. That request is denied as moot.").

facility, and its Executive Director Tammy Robinson. Plaintiff claims that by enforcement of certain policies and procedures regarding criteria for continued residency and by failing to accommodate her disability, Defendants are in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq* (Count I). Plaintiff also brings the following state law claims: Tortious interference with her right to quiet enjoyment of her home (Count II), confirmation of the power of attorney granted to Karen Frederick and Barry Frederick and a mandate that Defendants give it effect (Count III), intentional interference with business relations (Count IV), nuisance (Count V), and intentional infliction of emotional distress, *i.e.*, tort of outrage (Count VI). (Doc. 1)

Plaintiff now seeks a preliminary injunction to enjoin Defendants from violating her rights under Title III (doc. 2). Title III generally provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Title III is meant to prevent owners of public places of accommodation from creating barriers that would restrict a disabled person's ability to enjoy the defendant entity's goods, services, and privileges." *Rendon v. Valleycrest Products*, 294 F.3d 1279, 1283 (11th Cir. 2002). For purposes of the preliminary injunction, the parties do not dispute that Plaintiff is a disabled person within the meaning of the ADA, 42 U.S.C. § 12102.[2]

---

[2] In the complaint, Plaintiff alleges that she has had a stroke and fell in April 2018 and fractured her pelvis. Plaintiff also alleges she has diabetes, neuropathy in her feet and legs, and weak pelvic bones that have resulted in fractures of her pelvic bones. Plaintiff alleges that her physical disabilities substantially limit her major life activities of walking, balancing, getting up from and moving down to sitting positions, and moving from one seat to another. Plaintiff alleges that these limitations also limit the places in which she can reside. (Doc. 1)
(Continued)

The parties also currently do not disputre that Defendant Live Oak Village is a place of public accommodation,[3] specifically, that Live Oak Village is a place of lodging as defined in 42 U.S.C. § 12181(7)(A).

Relevant to this action, Title III provides a "general prohibition" against discrimination, stating that an "individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration – that have the effect of discriminating on the basis of disability[.]" 42 U.S.C. § 12182(b)(1)(D)(i).  Also, Title III provides "specific prohibitions" against discrimination, and in relevant part, states that "discrimination includes - -

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
>
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;
>
> (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]

42 U.S.C.A. § 12182(b)(2)(a)(i),(ii),(ii).

---

[3] The Court notes that Defendants assume for purpose of this argument that Title III applies but assert that the "applicability of Title III to ALF's falls in the gray area." (Doc. 10, p. 7, n. 3)

3

Injunctive relief is the only form of relief available to the Plaintiff under Title III. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) ("In this case, Plaintiff Houston seeks injunctive relief, which is the only form of relief available to plaintiffs suing under Title III of the ADA.") (citing 42 U.S.C. § 12188(a) for its provision that "the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a–3(a), which allows a private right of action for only injunctive relief for violations of Title II of the Civil Rights Act of 1964, Pub.L. 88–352, codified as amended at 42 U.S.C. § 2000a et seq."). "A preliminary injunction may be entered only if the movant clearly establishes each of the following requirements: '(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest.'" *St. Paul's Episcopal Sch. v. Alabama High Sch. Athletic Ass'n*, 2018 WL 3150356, at *8 (S.D. Ala. June 27, 2018) (citing *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018)).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Keister*, 879 F.3d at 1287 (quoting *American Civil Liberties Union of Fla., Inc. v. Miami–Dade County School. Board*, 557 F.3d 1177, 1198 (11th Cir. 2009)). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits" *American Civil Liberties,* 557 F.3d at 1198 (citations omitted). "If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1329 (11th Cir. 2015) ("Because the plaintiffs have not

shown a substantial likelihood of success on the merits, we need not consider the remaining factors in the preliminary injunction test.").

    1. <u>Substantial likelihood of success on the merits</u>

    A. <u>Claims brought pursuant to 42 U.S.C. § 12182(b)(1)(D)(i) and 42 U.S.C. § 12182(b)(2)(A)(i).</u>

Plaintiff claims that Live Oak has a policy that a resident is asked to leave if the resident falls twice in thirty days and this continuing eligibility criteria screens out Plaintiff on the basis of her disability. She states that her disabling conditions cause her to fall, she has fallen more than twice in thirty days, and she has been asked to find other lodging. Plaintiff argues that Defendants have not shown that "two falls within 30 days and you are out-of-here eligibility criteria is necessary to live at Live Oak Village" (doc. 11, p. 3-4, 9-11). Plaintiff points out that Ala. Admin. Code § 420-5-4-.06(6)(b)(1)&(2)[4], which speak to admission and retention of residents at assisted living facilities, do not require discharge after two falls.

In support, Plaintiff provides the Court with copies of three letters. The first was a "30-day discharge" letter sent May 29, 2018, five days after Plaintiff arrived on May 25, 2018. The writer, Defendant Robinson, states that Live Oak Village is regulated by the Alabama State

---

[4] These rules are adopted and promulgated by the Alabama State Board of Health by authority vested in the Board by the Legislature of Alabama, Ala. Code § 22-21-20, *et seq.*, and address admission and retention of residents and provide that an "assisted living facility shall not admit nor retain a resident who requires medical or skilled nursing care for an acute condition or exacerbation of a chronic condition expected to exceed 90 days unless: 1. The individual is capable of performing and does perform all tasks related to his or her own care; OR 2. The individual is incapable of performing some or all tasks related to his or her own care due to limitations of mobility or dexterity BUT the individual has sufficient cognitive ability to direct his or her own care AND the individual is able to direct others and does direct others to provide the physical assistance needed to complete such tasks, AND the facility staff is capable of providing such assistance and does provide such assistance." Ala. Admin. Code § 420-5-4-.06(6)(b)(1)&(2) (capitalization in original).

Board of Health - Department of Public Health's rules for assisted living facilities and that Plaintiff's "frequent falls" have placed her "beyond the assisted living regulations and shows a need beyond the required staffing of an Assisted Living" facility (doc. 2-2). Robinson also indicated that there were safety concerns for Plaintiff and other residents and that a determination was made that Plaintiff did not meet the "stated continuing residency criteria for Assisted Living." (Id.) Robinson further stated that "sitters will be needed during the thirty [day] discharge for your safety. If positive significant changes occur during this time frame this notice may be rescinded" (Id).[5]

Plaintiff also provided the Court with a copy of the Live Oak Village Physician Visit Summary (Plaintiff's Hearing Exhibit 2). The physician noted the reason for the visit as "med review due to multiple falls" (Id). After examining Plaintiff on July 24, 2018, the physician stated that Plaintiff was "capable of [activities of daily living] with assistance" and recommended Plaintiff "continue wheelchair use due to high fall risk" (Id.) The physician also checked that Plaintiff was "Appropriate for Assisted Living". (Id.) Plaintiff argues that the physician's opinion supports her position that she is capable of living at Live Oak Village and that Defendants have discriminated against her on basis of her disability by applying criteria that screens her out.

Defendants respond that the eligibility criteria applied are those mandated by state rules for assisted living facilities (doc. 15, p. 5, 2-9). Defendants point out that with respect to falls,

---

[5] The next letter was sent June 30, 2018. Robinson stated that Live Oak Village had not heard from Plaintiff regarding a transfer and gave the name and address of other local skilled care facilities (doc. 2-4). The last letter was sent on July 2, 2018. Robinson stated that the Alabama Department of Public Health had been notified that Plaintiff was still occupying her unit, that "appropriate measures, per our residential agreement" had been put in place, and that Plaintiff was responsible for payment (doc. 2-5). Again, a list of other possible facilities was provided.

Live Oak Village has a policy[6] based on Ala. Admin. Code § 420-5-4-.05(3)(d)(1)[7] that falling more than twice in thirty days constitutes a significant change in health status and requires interventions to address the change, but does not require discharge.

Defendants also argue that the rules established in Ala. Admin. Code § 420-5-4-.06(6)(b)(1)&(2) are necessary for the provision of the goods, services, facilities, etc., offered by an assisted living facility. Defendants argue that because the rules limit the type of staff and capabilities for assisted living facilities, it is necessary to limit the type of resident to ensure safe operation of the assisted living facility and the safety of residents. Defendants also argue that these rules are designed to prevent an assisted living facility from housing a resident with needs beyond the capabilities of the facility, and that without the mandated eligibility requirements, assisted living facilities would not be able to meet their purpose or offer their goods, services, facilities, etc., to the specific individuals they are designed to serve.

---

[6] The policy states as follows: "Each resident of the facility will be assessed on a monthly basis (more often when necessary), to identify significant changes in health status" (doc. 15-2). The procedure requires that a designated Live Oak Village employee "assess the appropriateness of intervention required by each resident monthly" and that the "facility shall assess residents on a monthly basis and more often when necessary to identify significant changes in health status or behavior … A significant change is defined as two or more fails in 30 days or less . . . (Id.).

[7] The rule, captioned "Plan of Care" states in relevant part that the plan shall include the following: "1. A listing of the resident's needs or problems that require intervention by the facility, such as behavioral symptoms, weight loss, falls, and therapeutic diets. The facility shall assess the appropriateness of interventions required by each resident monthly. . . . The facility shall assess residents on a monthly basis and more often when necessary to identify significant changes in health status or behavior to include awareness of medication. Significant change is defined as two or more falls in 30 days or less, a significant weight loss, unmanageable or combative or potentially harmful behaviors, any adverse drug interaction or over sedation or any elopement. . . . Any significant change requires immediate implementation and documentation of interventions or reassessment of existing interventions." Ala. Admin. Code § 420-5-4-.05(3)(d)(1).

The Court finds that Plaintiff has not made a showing of a substantial likelihood of success on the merits with respect to her claim that Live Oak Village's eligibility requirements screen her out of its services in violation of the ADA. In order to avoid discriminatory violations, Defendants must show that the eligibility criteria are "necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i).  Defendants have made a sufficient showing that the eligibility criteria are necessary for the provision of the goods, services, facilities, etc. being offered by Live Oak Village as an assisted living facility in Alabama.  Plaintiff has not rebutted this showing with evidence that reaches the level of showing she has a substantial likelihood of success on the merits.

As Defendants point out, the Alabama Department of Public Health rules are designed to prevent an assisted living facility from housing a resident with needs beyond the capabilities of the facility.  Housing such a resident could render the facility understaffed and potentially unsafe and unable to meet its purpose of providing assisted living to the specific individuals such facilities are designed to serve.  Specifically, an individual who either is "capable of performing and does perform all tasks related to his or her own care; [or are]  incapable of performing some or all tasks related to his or her own care due to limitations of mobility or dexterity BUT the individual has sufficient cognitive ability to direct his or her own care AND the individual is able to direct others and does direct others to provide the physical assistance needed to complete such tasks,[.]" Ala. Admin. Code § 420-5-4-.06(6)(b)(1)&(2).

At the hearing, Robinson's testimony established that Plaintiff fell five times between May 25, 2018 when she arrived and May 29, 2018.  She also fell again on June 10, 2018 and June 23, 2018 (doc. 10-4, Incident Reports). Each of these falls occurred when Plaintiff

8

attempted to transfer without calling for assistance. After the fall on June 10, 2018, sitters were placed with Plaintiff on a 24-hour schedule. A fall occurred again on June 23, 2018. Robinson testified that a sitter was not present because the family had dismissed the sitter the night before. The sitters were later reinstated. The most recent fall occurred on July 18, 2018 (doc. 15-2). A sitter was in place, but the Plaintiff's husband was assisting her to the bathroom when she fell.

Defendants identified the interventions put in place to attempt to keep Plaintiff as a resident – call pendant, pull cords, family meeting to discuss sitters, reminding Plaintiff and her husband to call for assistance, cue cards to remind Plaintiff to call for assistance and lock her wheelchair, reminding Plaintiff to wear non-skid shoes, and placing a non-skid mat in the wheelchair seat and recliner (doc. 15, p. 4; hearing testimony by Defendant Robinson).

However, Defendant Robinson credibly testified that Plaintiff did not consistently use the call pendant or the pull cords, which resulted in Live Oak Village providing private full-time private sitters to be sure that Plaintiff had assistance. Robinson testified that Live Oak Village staff could not sit with Plaintiff full time because the facility was not staffed or equipped for one-on-one care and doing so could jeopardize its license as an assisted living facility.

It appears that regardless of the interventions attempted by Live Oak Village, Plaintiff refuses to call for assistance. Thus, the evidence tends to show that Plaintiff does not direct others to provide her assistance as required by the rules for proper placement in an assisted living facility as required by the state regulation. Ala. Admin. Code § 420-5-4-.06(6)(b)(2) ("the individual is able to direct others and does direct others to provide the physical assistance needed to complete such tasks").

Plaintiff testified, by adoption of her declaration (doc. 2-1)[8], that she did not want or need a sitter. Her counsel also stated that the family would not provide a private sitter because it was their position that Live Oak Village should provide the assistance that Plaintiff needs. At the hearing, Plaintiff elicited testimony from Defendant Robinson that Plaintiff had fallen only twice in June and once in July, after the five initial falls in late May. From this evidence Plaintiff argues that she is getting better over time. However, Defendant Robinson testified that sitters were in place during that time frame to assist Plaintiff with standing or transferring. Plaintiff also points to the physician's summary which checked that Plaintiff, as of July 24, 2018, was appropriate for Assisted Living. While this is supportive evidence of Plaintiff's position, there is very little indication of what information was given to the physician for him to base his opinion.

Plaintiff also argues that Ala. Admin. Code § 420-5-4-.06(6)(b)(1) & (2) is unenforceable based on the Supremacy Clause. Specifically, Plaintiff cites to *Taylor v. General Motors Corp.*, 875 F. 2d 816 (11th Cir. 1989), and argues that the ADA renders unenforceable any state rule which imposes eligibility criteria that screen out disabled persons from public accommodations. Plaintiff has not shown a substantial likelihood of success on this claim for two reasons. First, the Plaintiff fails to discuss in any significant detail the complicated law of preemption and its application to the facts of this case.[9] But more importantly, at this stage of the litigation, the

---

[8] Plaintiff stated that "Without my permission and even without prior notice to me and my husband, Live Oak obtained 'sitters' that come and stay with me in our apartment during the evening until I go to bed for the night. ... I do not want, and have not agreed, to pay for a 'sitter' ... I am not a baby, and I do not need 'baby-sitters'" (doc. 2-1).

[9] With respect to conflict preemption analysis –
> The third, conflict preemption, may arise in two ways. First, conflict preemption can occur "when it is physically impossible to comply with both the federal and the state laws." *Browning,* 522 F.3d at 1167. It may also arise "when the state law stands as an obstacle to the objective of the federal law." *Id.* The court utilizes its

(Continued)

challenged regulation would appear to be a "necessary" requirement for the accommodation being offered, i.e. limited assisted living as defined in the contract.  Thus, the state regulation would not appear to be in conflict with the ADA.

B. <u>Claims brought pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii).</u>

Plaintiff's claims that "by failing to accommodate her disabilities, Defendants discriminated against" her in violation of Title III of the ADA (doc. 1, p. 1-19).  Although Plaintiff did not specify exactly which statute was violated with respect to a failure to provide reasonable accommodation, 42 U.S.C. § 12182(b)(2)(A)(ii), speaks to reasonable modifications to policies and procedures that are necessary to provide goods, service, facilities, etc., to an individual with disabilities under Title III.

Plaintiff argues that her requested accommodations are reasonable.  Specifically, she requests "assistance in response to her pulling the cords" and "assistance in response to her

---

judgment to determine what constitutes an unconstitutional obstacle to federal law, and this judgment is "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373, 120 S.Ct. 2288, 2294, 147 L.Ed.2d 352 (2000).

In determining the extent to which federal statutes preempt state law, we are "guided by two cornerstones." *Wyeth v. Levine,* 555 U.S. 555, 565, 129 S.Ct. 1187, 1194, 173 L.Ed.2d 51 (2009). First, " 'the purpose of Congress is the ultimate touchstone in every pre-emption case.' " *Id.* (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996)). Second, we presume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 565, 129 S.Ct. at 1194–95 (internal quotation marks and alterations omitted); *see also Arizona v. United States,* 567 U.S. ––––, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012).

*Georgia Latino All. for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1262–63 (11th Cir. 2012) (addressing certain parts of Georgia law as preempted by the Immigration and Naturalization Act).

pushing the button" (doc. 11, p. 6-7). Plaintiff specifically does not want sitters and "disclaims any request for 'near constant assistance' which she neither needs nor wants" (Id., p. 6; Doc. 2-1).  Plaintiff argues that the requested accommodations are reasonable because she requests services that Live Oak Village already provides. Plaintiff points out that Ala. Admin. Code § 420-5-4-.06(3)(d) requires assistance for personal safety and Ala. Admin. Code § 420-5-4-.06(2)(a) requires assistance with necessary services, both of which Live Oak Village already provides to her and other residents. Plaintiff argues that she has not requested any accommodations that are beyond the capabilities of Live Oak Village. Thus, her requests are reasonable even in consideration of Ala. Admin. Code § 420-5-4-.06(2)(b) which requires discharge of a resident if the resident requires care beyond the capabilities of the assisted living facility. (Doc. 11, p. 12-13).

      Defendants respond that they are already providing the call button and pull cords as requested, but that despite repeated reminders Plaintiff refuses to use these mechanisms to call for assistance.  The Court finds this evidence credible, thus at this stage it would appear that Plaintiff is not utilizing the requested accommodations.   Therefore, Plaintiff has not shown a substantial likelihood of success on the merits of this claim.

      Plaintiff also requests "more time to allow more physical therapy to help her stabilize her mobility to prevent her from falling" (doc. 8, p. 7). Plaintiff's current physical therapist testified that Plaintiff has shown progress and could now stand with minimal assistance and ambulate with a rolling walker a distance of 100 feet. The plan is for sixty more days of therapy, with the goal of Plaintiff ambulating with her walker with contact or stand-by assistance and to stand from or transfer to the wheelchair without assistance.  The physical therapist testified that Plaintiff currently needs minimal assistance to ambulate and transfer. As to Plaintiff's cognitive

ability, the therapist testified that she does great for her age.

Defendants respond that the request for additional time to receive physical therapy is not reasonable because it would impose undue costs and administrative burdens[10] and fundamentally alter the nature of Defendants' accommodations. In regard to the latter, Defendants argue that providing the requested modification would necessitate the one-on-one care to prevent Plaintiff from falling in the interim and would violate Ala. Admin. Code § 420-5-4-.06(2)(b) & (6), which prohibits an assisted living facility from retaining a resident that requires medical or skilled nursing care for an acute or chronic condition[11] that will last more than 90 days and requiring discharge of a resident who requires care beyond the capabilities of the facility.[12]

The Court finds that Plaintiff has failed to show a substantial likelihood of success on the merits with respect to her claim that Defendants have failed to make reasonable modifications to its policy and procedures to accommodate her disability. Plaintiff admits that Defendants have made the reasonable modifications of providing the call button and the pull cords. To the extent that Plaintiff requests additional time for physical therapy until she no longer is a fall risk, she has not shown that she has a substantial likelihood of success of showing this request is

---

[10] Defendants state that they could continue with third-party sitters to supervise Plaintiff 24 hours a day, but she has rejected this arrangement. Thus, Defendants must either discharge the Plaintiff or pay for the sitters, which imposes undue costs and administrative burdens on Defendants.

[11] Defendants point out that Plaintiff attributes her falls to her previous stroke, diabetes, neuropathy and pelvic weakness (doc. 15, p. 12, n.7)

[12] Defendant Robinson testified that allowing Plaintiff to remain at Live Oak Village without the one-on-one sitters would be unsafe since Plaintiff does not remember to use the call button or pull cords consistently and may fall if she does not ask for assistance. Defendant Robinson also testified that if her staff provides the one-on-one care, then Live Oak Village would be at risk of losing its license for providing services beyond its current license and could lose its ability to accommodate the other residents who qualify to reside at an assisted living facility.

reasonable. Currently, it appears that accommodating her request for more time would result in the imposition of undue costs and administrative burdens on the Defendants, a fundamental alteration of the services Live Oak Village provides, and possibly result in Defendants' non-compliance with the Alabama rules controlling assisted living facilities.

2. Conclusion

Based upon the foregoing, the Court finds that Plaintiff has not met her burden of showing a substantial likelihood of success on the merits. Because Plaintiff has "not shown a substantial likelihood of success on the merits, we need not consider the remaining factors in the preliminary injunction test." *GeorgiaCarry.Org, Inc.*, 788 F.3d at 1329. Accordingly, Plaintiff's motion is DENIED.

DONE and ORDERED this the 30th day of July 2018.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**